# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2021
No. 00-2022

_____

| | |
|---|---|
| ABC Electric, Inc., | * |
| | * |
| Plaintiff - Appellee/ | * |
| Cross Appellant, | * |
| | * Appeals from the United States |
| v. | * District Court for the |
| | * District of Nebraska. |
| Nebraska Beef, Ltd., | * |
| | * |
| Defendant - Appellant/ | * |
| Cross Appellee, | * |

_____

Submitted: December 14, 2000

Filed: May 7, 2001

_____

Before LOKEN and MAGILL, Circuit Judges, and BATTEY,[*] District Judge.

_____

LOKEN, Circuit Judge.

Nebraska Beef, Ltd. ("Nebraska Beef"), decided to renovate and expand a slaughtering and beef processing facility. It hired JB Contracting, Inc. ("JB"), as general contractor. JB subcontracted with ABC Electric, Inc. ("ABC"), to provide electrical work on the project. As work progressed, problems developed, and ABC

_____

[*]The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

submitted substantial invoices for the costs of excessive overtime and extra work. Nebraska Beef refused to pay these additional amounts and eventually ordered ABC off the project. ABC filed this diversity suit against Nebraska Beef and JB, seeking damages for unpaid work. Nebraska Beef and JB counterclaimed to recover expenses incurred in completing the project's electrical work.

After ABC dismissed JB from the case, the district court[1] concluded there was no express or implied-in-fact contract between Nebraska Beef and ABC and dismissed all remaining breach-of-contract claims. After a jury trial, the court submitted ABC's quantum meruit and promissory estoppel claims. The jury returned a verdict in favor of ABC, awarding damages of $335,190 on the quantum meruit claim and $356,280 on the promissory estoppel claim. Nebraska Beef appeals, arguing the district court erred in construing the subcontract and instructing the jury, in admitting parol evidence, in dismissing Nebraska Beef's breach-of-contract counterclaim, and in awarding prejudgment interest. ABC filed a protective cross-appeal. We affirm.

## I.  ABC's Quantum Meruit Claim.

Under the Nebraska law of quantum meruit, ABC is entitled to recover the reasonable value of electrical services that it performed for Nebraska Beef's benefit in circumstances that would make it inequitable for Nebraska Beef not to pay. See, e.g., Hoffman v. Reinke Mfg. Co., 416 N.W.2d 216, 219 (Neb. 1987). Nebraska Beef contends that ABC, an unpaid subcontractor, may not recover from Nebraska Beef, the project owner, because the two were not in privity of contract. We disagree. Recovery under quantum meruit does not require privity of contract. See Siebler Heating & Air Conditioning, Inc. v. Jenson, 326 N.W.2d 182, 184 (Neb. 1982). The evidence, viewed most favorably to the jury's verdict, established that Nebraska Beef directly

---

[1]The HONORABLE WILLIAM G. CAMBRIDGE, United States District Judge for the District of Nebraska.

supervised the part of the project that renovated the existing facility. Nebraska Beef, not JB the general contractor, controlled the entire project, finally approved change orders, and directly paid ABC for work performed. ABC's quantum meruit claim did not include work for which Nebraska Beef had paid JB. In these circumstances, we conclude the Supreme Court of Nebraska would apply the principles of quantum meruit to permit an unpaid subcontractor to recover from the project owner. See generally Annot., Building and Construction Contracts: Right of Subcontractor Who Has Dealt with Primary Contractor to Recover Against Property Owner in Quasi Contract, 62 A.L.R. 3d 288 (1975).

A party may not recover under quantum meruit for work it was obligated to perform under an express contract. See Siebler, 326 N.W.2d at 184-85. However, a quantum meruit claim may supplement an express contract by seeking reasonable compensation for work not covered by the contract. See Associated Wrecking & Salvage Co. v. Wiekhorst Bros. Excavating & Equip. Co., 424 N.W.2d 343, 348-49 (Neb. 1988). Here, ABC's subcontract with JB required ABC to perform electrical work for an $880,000 "Contract Price." ABC's quantum meruit claim is not precluded by the subcontract, but it may not recover for the work it promised to perform for $880,000. Construing the proper scope of the $880,000 price term in the subcontract is the most difficult and critical issue in this case.

The parties agree that two provisions in the subcontract defined what work was covered by the contract price -- the scope-of-work paragraph, in which ABC agreed to:

> Furnish and install, complete all electrical work per plans and specs described on Schemmer Associates, Inc. drawings . . . [plus] temporary wiring/lighting as required in existing and new plant. Sub-Contractor is aware that Nebraska Beef will add equipment requiring electrical services to its existing plant and new addition, not shown on plan or specified. Sub-Contractor agrees to provide electrical service as required. Electrical is deemed to mean all inclusive electrical wiring, outlets, breakers, panels,

-3-

etc. as required such that when this contract is complete, the plant is operational electrically for production equipment.

and the contract price provision, in which JB agreed:

To pay [ABC] for the full, faithful and prompt performance of this contract agreement, subject to all of the terms and conditions hereof, the sum of Eight hundred and eighty thousand Dollars ($880,000.00) hereinafter called the "Contract Price" plus all additions and less all deductions herein provided for . . . .

A major difficulty in construing and integrating these provisions is that the Schemmer Associates drawings referred to in the scope of work covered only the proposed addition to the facility, whereas the entire project also included a major renovation of the existing facility. The parties hotly disputed, at trial and on appeal, whether the $880,000 contract price covered only, in the words of the scope-of-work provision, "all electrical work per plans and specs described on Schemmer Associates, Inc. drawings."

Under Nebraska law, construing an unambiguous contract is a question of law for the trial court. "However, if the contract is ambiguous -- that is, if it may objectively be understood in more than one sense -- then extrinsic evidence is admissible, and the parties' intent is a question of fact for the jury." Rayman v. American Charter Fed. Sav. & Loan Ass'n, 75 F.3d 349, 354 (8th Cir. 1996). Here, in the Order on Final Pretrial Conference, both parties listed as a disputed issue whether the scope of work described in the subcontract was ambiguous. But neither party asked the district court to resolve this issue prior to trial, and substantial extrinsic evidence on the question of the parties' intent was admitted without objection at trial.

At the close of evidence, just prior to the instruction conference, the district court ruled that the subcontract *un*ambiguously limited the $880,000 price term to the work described in the Schemmer Associates drawings. Although Nebraska Beef objected

-4-

to this construction, *it did not argue that the subcontract is ambiguous and therefore the scope-of-work issue should be submitted to the jury.* Accordingly, the district court instructed the jury, consistent with its construction of the subcontract, that ABC may only recover in quantum meruit for "construction work on the premises of [Nebraska Beef] over and above that required under the plans and specs described on Schemmer Associates, Inc. drawings."

Consistent with its position at trial, Nebraska Beef argues on appeal that the subcontract *un*ambiguously committed ABC to perform for $880,000 all electrical work within the scope of the entire project (excluding change orders and other extra work that were the subject of ABC's separate promissory estoppel claim). Therefore, the question whether the subcontract is ambiguous has been waived, and the only issue before us is whether the unambiguous contract has been properly interpreted by the district court, or by Nebraska Beef. We review the district court's interpretation of an unambiguous contract *de novo*. See Case Int'l Co. v. T.L. James & Co., 907 F.2d 65, 66 (8th Cir. 1990).

The district court construed the subcontract as requiring ABC to perform the work detailed in the Schemmer drawings for $880,000, and additional electrical work for additional compensation. The court relied on the language in the scope-of-work provision that "Nebraska Beef will add equipment requiring electrical services," reading that language in conjunction with the language in the price provision that JB would pay $880,000 "plus all additions." On the other hand, Nebraska Beef argues that ABC's promise "to provide electrical service as required," including work not shown on the Schemmer drawings, means that all such work was included in the $880,000 contract price.

The subcontract was signed after ABC and JB had begun work on the project, but before Nebraska Beef had defined the scope of the work to be performed in addition to that shown on the Schemmer Associates drawings. Viewing the issue of the

contracting parties' unambiguous intent at that point in time, JB would not reasonably have demanded, and ABC would not reasonably have made, an open-ended commitment to perform whatever work Nebraska Beef might decide in the future to require for a fixed price of $880,000. Thus, ignoring the extrinsic evidence of intent offered at trial -- evidence that may not be considered in construing an unambiguous contract -- the district court's interpretation of the subcontract is clearly more reasonable than Nebraska Beef's. As Nebraska Beef does not argue the subcontract is ambiguous in this regard, the district court's construction must be affirmed.[2]

## II. A Parol Evidence Issue.

Nebraska Beef argues the district court erred in admitting parol evidence that contradicted the unambiguous terms of the written subcontract. This contention borders on the frivolous. Parol evidence is admissible to aid in the interpretation of an ambiguous contract. Label Concepts v. Westendorf Plastics, Inc., 528 N.W.2d 335, 339-40 (Neb. 1995). Prior to trial, both parties listed as an issue for trial whether the subcontract was ambiguous, and neither party asked the district court to rule on that issue before trial. At trial, both parties offered extrinsic evidence on this issue without objection. Just prior to the instruction conference, the district court ruled that the subcontract was unambiguous, commenting that the court was "at a little bit of a loss why neither of the parties have objected to [the extrinsic evidence] on the basis of the parol evidence rule." We decline to review the parol evidence question for plain error. It was affirmatively waived by both parties before and during trial.

---

[2]Nebraska Beef's challenge to the district court's jury instruction on quantum meruit is without merit. The instruction accurately reflected the court's construction of the subcontract, which is the proper way to instruct the jury when a contract is unambiguous. Nebraska Beef agrees the subcontract is unambiguous, so the only issue on appeal is whether the court properly construed that contract.

### III.  Nebraska Beef's Counterclaim.

Nebraska Beef filed a counterclaim for damages it incurred as a result of ABC's alleged breaches of the subcontract.  At the close of all the evidence, the district court granted ABC judgment as a matter of law on this counterclaim because there was no contract between ABC and Nebraska Beef.  On appeal, Nebraska Beef does not challenge this ruling but argues that it should have been permitted to present its counterclaim evidence as an equitable offset to ABC's quantum meruit and promissory estoppel claims.  More specifically, Nebraska Beef objects to the district court's exclusion of evidence reflecting amounts paid to other electrical subcontractors after ABC was removed from the project.  This issue was not properly preserved.

At trial, Nebraska Beef did not offer this evidence for the purpose of limiting the amount ABC should recover on its quantum meruit theory.  It was only offered as evidence of Nebraska Beef's damages on a breach-of-contract counterclaim that failed as a matter of law because no contract was proved.  The district court charged the jury that ABC could recover under quantum meruit if it would be "inequitable and unconscionable to permit [Nebraska Beef] to avoid payment."  The court did not preclude Nebraska Beef from offering evidence and arguing to the jury regarding what "inequitable and unconscionable" should mean in this context.  The court properly dismissed the breach-of-contract counterclaim and excluded as irrelevant evidence offered solely to quantify that counterclaim.

### IV.  Prejudgment Interest.

The district court awarded ABC $91,724.69 in prejudgment interest under NEB. REV. STAT. § 45-103.02, which provides that a prevailing plaintiff may recover prejudgment interest "on the unpaid balance of an unliquidated claim from the date of the plaintiff's first offer of settlement which is exceeded by the judgment."  It is

undisputed that ABC's settlement offer of April 7, 1998, satisfied the procedural requirements of this statute and that the judgment in favor of ABC exceeded that settlement offer. Nebraska Beef argues that prejudgment interest should not be assessed, however, because ABC's settlement offer required acceptance by JB, Nebraska Beef's co-defendant in the lawsuit at that time. We disagree. On November 14, 1997, prior to ABC's settlement offer, JB and Nebraska Beef entered into a separate agreement in which JB assigned all of its claims against ABC to Nebraska Beef and granted Nebraska Beef "sole authority and discretion" to settle or compromise claims made against JB arising out of this project. Thus, Nebraska Beef had the authority to settle the case on behalf of both itself and JB. In these circumstances, the district court properly awarded ABC prejudgment interest.

The judgment of the district court is affirmed. ABC's cross-appeal is dismissed as moot.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-