# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2005

_____

Al Jessep,

                Appellant,

v.

Jacobson Transportation
Company, Inc.; Shelley
Capehart, in her official
and individual capacity,

                Appellees.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Southern District of Iowa.
\*
\*
\*
\*
\*
\*

_____

Submitted: November 3, 2003

Filed: December 2, 2003

_____

Before RILEY, McMILLIAN, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

      Al Jessep (Jessep) appeals the district court's[1] adverse grant of summary judgment in his action alleging breach of contract and violation of 49 U.S.C. § 14103. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Jessep, an owner-operator of a semi tractor-trailer, entered into an "Independent Contractor Standard Agreement" (lease) with Jacobson Transportation Company (Jacobson), a carrier of goods and freight. Jessep agreed to lease his vehicle to Jacobson and to provide transportation services in exchange for payment according to a compensation schedule. Paragraphs 3 and 6E of the lease expressly provide that the qualified driver/contractor will load, transport, deliver, unload, or assist in unloading accepted freight. Pursuant to paragraph 6L of the lease, Jessep agreed to abide by Jacobson's Policy and Procedure Manual (manual), which provides that if a driver rejects a load offer, the offer will be rescinded, the driver will be moved to the bottom of the dispatch board, and the driver will not be paid for bounce miles–miles driven in an empty truck between loads. The manual also provides that a driver who rejects a load offer is subject to possible disciplinary action or lease cancellation.

On September 17, 2001, Jacobson assigned Jessep a "driver assist" load to be picked up in Fort Worth, Texas, and delivered to Michaels Stores, Inc., in Little Rock, Arkansas. Jessep told Jacobson's dispatcher, Shelley Capehart (Capehart), he would not assist in unloading the freight, although he was not refusing the load. Capehart responded that "refusing to unload is the same thing as refusing the load." She informed Jessep that, if he refused the load, he would go to the bottom of the dispatch list and would not be paid for bounce miles to his next load. Jessup did not accept the "driver assist" load. Later that morning, Capehart dispatched another load to Jessep, which he accepted, but Jacobson did not pay Jessep for his bounce miles.

Jessep filed the instant action in December 2001, and Jacobson terminated its lease with Jessep on April 29, 2002. In his third amended complaint, which added Capehart as a defendant, Jessep alleged Jacobson and Capehart had breached the lease and had coerced or attempted to coerce him to unload freight in violation of 49 U.S.C. § 14103(b), which states:

b. Coercion prohibited.–It shall be unlawful to coerce or attempt to coerce any person providing transportation of property by motor vehicle for compensation in interstate commerce . . . to load or unload any part of such property onto or from such vehicle or to employ or pay one or more persons to load or unload any part of such property onto or from such vehicle; except that this subsection shall not be construed as making unlawful any activity which is not unlawful under the . . . Norris-LaGuardia Act.

Jessep sought declaratory and injunctive relief. The district court granted summary judgment in favor of the defendants, and this appeal followed.

We review de novo the district court's grant of summary judgment, as well as the district court's interpretation of a contract, see ABC Elec., Inc. v. Neb. Beef, Ltd., 249 F.3d 762, 766 (8th Cir. 2001), and a federal statute; see Norwest Bank of N.D. v. Doth, 159 F.3d 328, 332 (8th Cir. 1998).

We agree with the district court that there was no breach of contract. The lease unambiguously provides that a contractor is responsible for unloading freight. The manual clearly dictates that an owner-operator who refuses a load is not entitled to payment for bounce miles. Therefore, Jessep suffered only the consequences he contracted for when he refused the "driver assist" load.

We also find no violation of 49 U.S.C. § 14103(b). The plain language of the statute does not prohibit all unloading of motor vehicles by drivers, only coerced unloading. Related statutes clarify that carriers and drivers are expected to enter into contractual agreements as to who will be responsible for unloading freight. See 49 U.S.C. § 14102(b) ("any arrangement, between a motor carrier . . . and any other person, under which such other person is to provide any portion of such transportation by a motor vehicle not owned by the carrier shall specify, in writing, who is responsible for loading and unloading the property onto and from the motor vehicle"); 49 U.S.C. § 14103(a) (whenever shipper or receiver requires owner or

operator be assisted in loading or unloading vehicle, "shipper or receiver shall be responsible for providing such assistance or shall compensate the owner or operator for all costs associated with securing and compensating" assistants); 49 C.F.R. § 376.12(e) (2002) ("The lease shall clearly specify who is responsible for loading and unloading the property onto and from the motor vehicle, and the compensation, if any, to be paid for this service."). Additionally, the legislative history indicates section 14103 was meant to prohibit coercive and extortionate practices. See H.R. Rep. No. 96-1069, at 30-31 (1980) ("Where owner-operator is leased to a regulated carrier, the Committee expects the lease to specify the responsibility of the carrier and owner-operator regarding loading and unloading, including compensation.").

Jessep's remaining arguments are either meritless or are not properly before us, because they are raised for the first time in Jessup's reply brief.

Accordingly, we affirm.

_____