# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6040

_____

In re:                                          *
                                                *
Yehud-Monosson USA, Inc.,                        *
                                                *
            Debtor.                              *    Appeal from the United States
                                                *    Bankruptcy Court for the District
Yehud-Monosson USA, Inc.,                        *    of Minnesota
                                                *
            Debtor - Appellant,                  *
                                                *
v.                                               *
                                                *
Habbo Fokkena,                                   *
                                                *
            U.S. Trustee - Appellee,             *

_____

Submitted: September 13, 2011
Filed: October 5, 2011

_____

Before VENTERS, FEDERMAN, and SALADINO, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

The Debtor, Yehud-Monosson USA, Inc., appeals the bankruptcy court's order converting its Chapter 11 bankruptcy case to one under Chapter 7. An order converting a case from one chapter to another is a final order over which we have

-1-

jurisdiction.[1]   For the reasons stated below, we affirm the order of the bankruptcy court.[2]

# I. STANDARD OF REVIEW

A bankruptcy court's conversion of a bankruptcy case is reviewed for an abuse of discretion.[3]   A court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous.[4]

# II. BACKGROUND

The following facts have been gleaned from the pleadings.

## A.   The Prior Bankruptcy Cases.

This case is the fifth time in two years that the Debtor's 100% shareholder – the Dr. R. C. Samanta Roy Institute of Science & Technology ("SIST") – and president, Naomi Isaacson, have requested Chapter 11 relief through a series of related business entities involving essentially the same assets and liabilities.

---

[1] *See Hedquist v. Fokkena* (*In re Hedquist*), 450 F.3d 801, 802 (B.A.P. 8th Cir. 2006).

[2] The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

[3] *See In re Reagan,* 374 Fed.Appx. 683, 684, 2010 WL 980440 (8th Cir. March 18, 2010); *In re Lumber Exch. Bldg. Ltd. P'ship*, 968 F.2d 647, 648 (8th Cir. 1992) ("The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case.") (citing *In re Gonic Realty Trust*, 909 F.2d 624, 626-27 (1st Cir. 1990); *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986)).

[4] *Official Comm. of Unsecured Creditors v. Farmland Indus., Inc.* (*In re Farmland Indus., Inc.*), 397 F.3d 647, 651 (8th Cir.2005).

The first petition was filed on March 16, 2009, by an entity known as Midwest Oil of Minnesota, LLC ("Midwest Oil") in the bankruptcy court for the District of Delaware.[5] That case was dismissed on September 22, 2009. Notably, in dismissing Midwest Oil and the bankruptcy cases of several related entities, the Delaware bankruptcy court stated in its order of dismissal that the "[d]ebtors have, beyond cavil, abused the bankruptcy process."[6] On appeal, the District Court for the District of Delaware affirmed the bankruptcy court's dismissal of the bankruptcy cases of Midwest Oil and its affiliates. The Delaware debtors further appealed the dismissal of their cases to the Third Circuit Court of Appeals, but on July 26, 2010, Midwest Oil withdrew from the appeal prior to its resolution.[7]

On July 26, 2010, the same day it withdrew from its appeal to the Third Circuit, Midwest Oil filed a bankruptcy case in the Bankruptcy Court for the District of Minnesota, Case No. 10-35450. That case was dismissed on August 18, 2010, upon motion by the United States Trustee for Region 12. At the conclusion of the hearing on the UST's motion, the bankruptcy court in that case (Kressel, J.) commented, "I think it's (this case) been filed in bad faith and as a sort of manipulation of the system."[8]

On September 1, 2010, Midwest Oil filed another bankruptcy case – its third – in the Bankruptcy Court for the District of Delaware, Case No. 10-12771. That case

---

[5] Case No. 09-10878, jointly administered under Case No. 09-10876, the Chapter 11 bankruptcy case filed by Midwest Oil's parent company, Dr. R. C. Samanta Roy Institute of Science & Technology.

[6] September 22, 2009 Order Dismissing Case, Case No. 09-10878 at 4.

[7] Other affiliated debtors remained in the appeal.

[8] Transcript of August 18, 2010 hearing, *In re Midwest Oil of Minnesota LLC*, Case No. 10-35450.

was dismissed on December 20, 2010, on several grounds, including a lack of good faith.[9]  The Delaware bankruptcy court also barred Midwest Oil from filing any further petitions or pleadings in that court until it could retain counsel properly licensed to practice in Delaware.[10]

Midwest Oil filed its fourth bankruptcy case less than a month later, on January 19, 2011, once again in the Bankruptcy Court for the District of Minnesota (Kressel, J).[11]  This case was dismissed less than two months later, on March 9, 2011.  The following findings of the bankruptcy court are notable:

> The debtor's history of repeated filings in the face of pending foreclosures demonstrates clearly and unequivocally that this case was filed in bad faith and that there is a continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.
>
>       \*   \*   \*
>
> As further cause and as further evidence of the debtor's bad faith, the debtor refused to appear for its meeting of creditors.  I find this somewhat ironic because one of the complaints of the debtor in its response to the expedited nature of the original hearing on the United States Trustee's motion was that the United States Trustee had failed to wait for the meeting of creditors to give the debtor the opportunity to

---

[9] December 20, 2010 Order Dismissing Case, Case No. 10-12771 at 19-21.

[10] Finding qualified counsel has apparently been a persistent problem for the various entities involved in these cases.  Counsel that has represented the Debtor in this case was admittedly not disinterested and could not be employed by the Debtor pursuant to 11 U.S.C. § 327, and her employment was never approved by the bankruptcy court.  Another attorney sought approval to be employed but was denied because he, too, was not disinterested.  From a review of all five cases filed by these entities, it appears that none of the entities ever employed disinterested bankruptcy counsel.  This situation reinforces the bankruptcy court's finding that the Debtor's filing was an abuse of the bankruptcy process.

[11] Case No. 11-30319.

-4-

provide further information to the United States Trustee. However, when given that opportunity, it refused to participate. The debtor also failed to participate in the "initial debtor interview" scheduled by the United States Trustee.

* * *

The United States Trustee also requests that if the case is dismissed that the debtor be barred from filing another case for at least one year. That is an entirely appropriate request. There is not much doubt that in the absence of such a prohibition, the debtor would simply file another case in this district or in another district. The time has come to put a stop to the debtor's abuse of the system and allow creditors to exercise their rights, which have been continually frustrated by the debtor's serial filings.

## B.    The Current Bankruptcy Case.

On December 1, 2010, an entity called Yehud-Monosson USA, Inc., ("Yehud") incorporated in New York as a domestic business corporation. Yehud had been listed in Midwest Oil's most recent bankruptcy schedules as the "leassee" (sic) of property owned by Midwest Oil located at 2611 Bridge Ave., Albert Lea, MN 56007. Sometime between the dismissal of Midwest Oil's case on March 9, 2011, and March 23, 2011, Yehud supposedly merged with Midwest Oil.[12]

On March 23, 2011, Yehud filed a Chapter 11 bankruptcy petition in the Southern District of New York, apparently on the eve of a sheriff's sale for one of the properties owned by Midwest Oil. Shortly after filing this case, the United States Trustee for that region argued that Yehud's case should be transferred to Minnesota.

_____

[12] The Debtor glosses over the details of this merger. It maintains that the new entity has "significantly" more assets, cash flow, and income, but the record is devoid of any documentation of how the supposed merger was accomplished, and the only additional significant asset listed by Yehud is "business equipment" valued by Yehud at $250,000. Yehud has never explained what these assets are. Quite simply, the record is devoid of any evidence that the "merger" of Midwest Oil and Yehud was anything more than a name change.

The New York bankruptcy court agreed with the UST and transferred the case to the bankruptcy court for the District of Minnesota.[13]  Yehud appealed the transfer order to the Court of Appeals for the Second Circuit and also moved for a stay pending appeal, but the Second Circuit denied Yehud's motion for a stay on June 8, 2011, and the appeal was voluntarily dismissed on August 3, 2011.

Meanwhile, in Minnesota, the United States Trustee for Region 12, Habbo F. Fokkena, moved to convert Yehud's case, arguing, *inter alia*, that Yehud had filed the New York case in bad faith to circumvent the Minnesota filing bar and continue to frustrate its creditors. The UST argued that conversion was justified by the continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation, and by Yehud's failure to comply with its obligations as a Chapter 11 debtor under the Bankruptcy Code, Bankruptcy Rules, and Local Rules.  Yehud's two largest secured creditors also supported the conversion of Yehud's case to Chapter 7.

In response, Yehud argued that its case was legitimate and that the bankruptcy court could not involuntarily convert its case because it was a not-for-profit organization.  Yehud also demanded an evidentiary hearing

On June 15, 2011, the court held a hearing on the UST's motion at which the parties argued in support of their respective positions.  The court orally ordered the conversion to Chapter 7 at the conclusion of the hearing.

### III.  DISCUSSION

As noted, a bankruptcy court enjoys broad discretion in determining whether to convert a case.  Here, the bankruptcy court exercised that discretion based on the terse, but sufficient, finding that "[t]he debtor has essentially had its day in court four times already. . . . This is a gross abuse of judicial process, nothing less than that."

---

[13] Minnesota Bankruptcy Court Case No. 11-42834.

A finding that a pending Chapter 11 case is an abuse of process is an appropriate ground for conversion under 11 U.S.C. § 1112(b).[14] Moreover, the bankruptcy court's determination that the debtor has had its day in court four times is based on the implied finding that Yehud is substantially the same entity as Midwest Oil, the entity that Judge Kressel barred from filing pleadings or a petition in the bankruptcy court. That finding is not clearly erroneous.

A comparison of the schedules and statements of financial affairs filed in the prior Midwest Oil case, Case No. 11-30319, and the current bankruptcy case, Case No. 11-42834, yields sufficient similarities to support the bankruptcy court's finding that this Debtor already had had its day in court – four times. Among other similarities between the Midwest Oil and Yehud-Monosson debtors, their principals are the same (Isaacson and SIST); they own the same real property; they owe roughly the same secured debt; they list the same extensive list of "Contingent and Unliquidated Claims of Every Nature, Including Tax Refunds, Counterclaims of the Debtor, and Rights to Setoff Claims;" they list the same holders and amount (to the penny) of unsecured priority claims; and they owe roughly the same amount of unsecured, non-priority debt.[15]

Yehud adamantly denies that Yehud and Midwest Oil are the same, arguing that Yehud has "significantly more assets, more cash flow, and more income than Midwest Oil of Minnesota, LLC had." But Yehud has not offered a single detail in support of this assertion, despite having numerous opportunities to do so – in its

---

[14] *See In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000) (noting that the implied good faith requirement in 11 U.S.C. § 1112 was designed to avoid an abuse of the bankruptcy process).

[15] The amount and holders of the unsecured non-priority claims vary by less than $7,000, representing a 6% increase from Midwest Oil's most recent filing.

objection to the UST's motion, in the 650 pages of exhibits filed with the objection, or in Yehud's memorandum of law or affidavit filed in response to the UST's supplement to his motion to dismiss. Moreover, Yehud's contention that it has significantly more assets, cash flow, and income than Midwest Oil is belied by the schedules filed by the two debtors. According to schedules in Midwest Oil's most recent case (Case No. 11-30319), it had $322,401.32 in income in the two years prior to its filing. In contrast, Yehud's Statement of Financial Affairs indicates that it had no income prior to its bankruptcy filing.

Ultimately, it was not necessary for the bankruptcy court to specifically find that Yehud was the exact same entity as Midwest Oil, which was still subject to Judge Kressel's March 9, 2011 one-year bar from filing a bankruptcy petition. A substantial similarity was sufficient to support the bankruptcy court's determination that Yehud had had its "day in court" four times – in three different courts – and that the current filing was an abuse of process. And based on the record that existed at the time of the hearing on the UST's motion, that determination was not clearly erroneous. This ruling is further buttressed by the fact that at least two other courts had found the bankruptcy filings by Yehud's predecessor entity to be abusive of the bankruptcy process and filed in bad faith.

**B.    Conversion of Yehud's case to one under Chapter 7 is permissible under 11 U.S.C. § 1112(c).**

Section 1112(c) prohibits the conversion of a Chapter 11 case to a case under Chapter 7, "if the debtor is a farmer or a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion." Yehud contends that the bankruptcy court erred in converting its case because it is not a moneyed, business, or commercial corporation. Despite the prolixity and vehemence with which Yehud has argued this point, however, the argument is wholly without merit.

In the Eighth Circuit, the test for whether a debtor is a moneyed, business, or commercial corporation is determined by a consideration of "the classification of the corporation by the state; the powers conferred upon it; and the character and extent of its main activities."[16]   Under this test, Yehud is a moneyed, business, or commercial corporation – most notably, by its own admission.

The affidavit of Yehud's president, Naomi Isaacson, attached to Yehud's bankruptcy petition states, unequivocally, that "Yehud-Monosson USA, Inc. is in the business primarily [sic] of owning and operating convenience stores."   That statement, in conjunction with Yehud's New York State Certificate of Incorporation, which places no restriction on the activities of the corporation, supports the bankruptcy court's implicit determination that Yehud was a moneyed, business or commercial corporation, and therefore was subject to having its case converted to Chapter 7.  The fact that Yehud's parent corporation might not be subject to conversion under § 1112(c) is irrelevant.  Yehud and SIST's principals chose to operate Yehud and SIST as separate entities and must accept the consequences of those decisions, one consequence being that SIST's alleged nonprofit status does not shield Yehud's Chapter 11 bankruptcy case from conversion.

Yehud argues that the fact that it engages in a for-profit activity does not necessarily make it a moneyed, business, or commercial corporation.  This would be

---

[16] *Missco Homestead Ass'n v. U.S.*, 185 F.2d 280, 282 (8th Cir. 1951) (defining identical language in the Bankruptcy Act of 1898 for purposes of determining whether an entity was subject to an involuntary bankruptcy petition). *Missco* remains good law and is instructive on the interpretation of § 1112(c).  *See In re Grace Christian Ministries, Inc.*, 287 B.R. 352, 355 (Bankr. W.D. Pa. 2002) (citing *Missco* and other Bankruptcy Act cases and noting that they "appear to retain their vitality under the Bankruptcy Code even though they are of relatively ancient vintage and were decided under the former Bankruptcy Act.").

true if Yehud's for-profit activity was ancillary or incidental to nonprofit activities.[17] But Yehud's commercial, for-profit activity – owning and operating convenience stores – was, by its own admission, its *primary* activity. Therefore, the bankruptcy court did not commit clear error in determining that Yehud is a moneyed, business, or commercial corporation.

## C.     No evidentiary hearing was required.

Yehud insists that it was entitled to an evidentiary hearing and that it would have prevailed if given such a hearing. Section 1112 provides for the dismissal of a debtor's case for cause "after notice and a hearing." Section 102(1)(A) clarifies that phrase, defining it as "after such notice as is appropriate *in the particular circumstances*, and such opportunity for a hearing as is appropriate *in the particular circumstances*."[18] Here, the particular circumstances did not warrant an evidentiary hearing.[19]

Despite having ample notice of the basis for the UST's motion, Yehud has never specifically identified what evidence it would produce at such an evidentiary

---

[17] *See, e.g.*, *In re Allen University*, 497 F.2d 346, 348 (4th Cir. 1974) (holding that eleemosynary educational corporation was not a "moneyed, business, or commercial corporation" where businesses operated by entity were ancillary to the corporation's main purpose of education.); *In re Maedc Mesa Ridge, LLC*, 334 B.R. 197, 201(Bankr. N.D. Tex. 2005) (finding that entity running apartment complex was not commercial corporation where complex served low income families and rent increases and lease lengths had to be approved by the Secretary of Housing and Urban Development).

[18] 11 U.S.C. § 102(1)(A) (emphasis added).

[19] *See In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1312 (2nd Cir. 1997) (holding that an evidentiary hearing was not necessary when "the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss a Chapter 11 case for cause. . . . ").

hearing – in the bankruptcy court or in its pleadings in this appeal. Instead it relied (and continues to rely) on vague, unsupported statements that Yehud has "significantly more assets" than Midwest Oil. Moreover, instead of attaching to its responses to the UST's motion an outline or overview of what it would produce at an evidentiary hearing, such as a list of the assets Yehud contributed to Midwest Oil, Yehud expounded at length at the alleged prejudices it has suffered and offered 650 pages of pleadings which were tangentially related (at best) to the issue of conversion.

We have given Yehud the benefit of the doubt on the Trustee's allegations that it has failed to abide by reporting requirements, pay quarterly fees, and properly and timely establish and use a debtor-in-possession account. We have scoured the record for some indication that Yehud had in its possession evidence that would support its contentions that it was truly a different company than Midwest Oil, which had faced similar dismissal motions in the four previous cases, and have found none. We trust the bankruptcy court did likewise. And the bankruptcy court's determination that Yehud was subject to conversion under § 1112(c) is supported by Yehud's own admission that its primary activity was the operation of a commercial enterprise. In short, facts – not prejudice – drove the bankruptcy court's determination that Yehud is substantially the same entity as Midwest Oil and that conversion was appropriate.

## IV. CONCLUSION

For the reasons set forth above, we affirm the decision of the bankruptcy court converting the Debtor's Chapter 11 case to one under Chapter 7.