# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 11-6042

In re:                                                      *
                                                            *
In re:  AFY, Inc., also known as                            *
Ainsworth Feed Yards Company, Inc.,                         *
                                                            *
        Debtor.                                             *
                                                            *
Robert A. Sears; Korley B. Sears,                           *          Appeal from the
                                                            *          United States
        Interested parties - Appellants,                    *          Bankruptcy Court for the
                                                            *          District of Nebraska
                v.                                          *
                                                            *
                                                            *
Ronald H. Sears; Ron H. Sears Trust;                        *
Rhett R. Sears; Rhett Sears Revocable                       *
Trust; Dane Sears,                                          *
                                                            *
        Claimants - Appellees.                              *

Submitted: November 30, 2011
Filed: January 23, 2012

Before KRESSEL, Chief Judge, SCHERMER and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Robert A. Sears ("Robert") and Korley B. Sears ("Korley") appeal from the June 8, 2011 order of the bankruptcy court:[1] (1) overruling their objections to Claim Nos. 8, 9 and 10, which claims were filed by Rhett R. Sears, Rhett R. Sears Revocable Trust, Ron H. Sears Trust, Ronald H. Sears, and Dane R. Sears (collectively, the "Sears Family Members") in the bankruptcy case of AFY, Inc., also known as Ainsworth Feed Yards Company, Inc. (the "Debtor"); and (2) disallowing Claim No. 26 of Korley.[2] We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

**ISSUES**

The issues before this Court are whether the bankruptcy court erred when it:(1) disallowed Claim No. 26 filed by Korley B. Sears; (2) overruled the objection to the claim of the Sears Family Members; and (3) denied the requests by Korley and Robert to have the hearing postponed to allow time for discovery and for a hearing with testimony and cross-examination of witnesses, rather than having the matters submitted on affidavit evidence. In addition, the Sears Family Members argued that if we affirm the bankruptcy court's denial of Korley's Claim No. 26, Robert and

_____

[1] The Honorable Thomas L. Saladino, Chief United States Bankruptcy Judge for the District of Nebraska.

[2] In their Notice of Appeal, Robert and Korley also indicate that they appeal from a June 10, 2011 order of the bankruptcy court that denied the Chapter 7 trustee's objection to Korley's Claim No. 26 as moot because the bankruptcy court had already disallowed Claim No. 26 by its June 8, 2011 order. There is no reference to the trustee's objection to Claim No. 26 or the June 10, 2011 order in Robert's and Korley's Designation of Record and Statement of Issues, and the trustee's objection to Claim No. 26 and the June 10, 2011 order were not discussed in the briefs or at oral argument. In addition, if Robert and Korley sought to appeal from the June 10, 2011 order, they were required to file a separate notice of appeal, accompanied by the applicable filing fee. Accordingly, we do not consider the June 10, 2011 order as part of this appeal.

Korley do not have standing to appeal the bankruptcy court's order overruling their objections to the claims of the Sears Family Members. Because we affirm the bankruptcy court's decision to disallow Korley's Claim No. 26, we also consider whether Robert and Korley have standing to bring this appeal. Nevertheless, we agree with the bankruptcy court on all issues and, therefore, we affirm.

## BACKGROUND

On June 22, 2007, the Sears Family Members executed a Stock Sale Agreement whereby they sold their interests in the Debtor to the Debtor and to Korley. The Debtor executed the Stock Sale Agreement through its President, Robert, and its Vice President, Korley. Korley also signed the Stock Sale Agreement in his individual capacity.

Paragraph 2 of the Stock Sale Agreement lists "Buyers" as "AFY, Inc., a Nebraska corporation formerly known as Ainsworth Feedyards Company, Inc., and Korley B. Sears." Paragraph 4 refers to "[t]he purchase price to be paid by Buyers to Sellers. . . ." Paragraph 7 of the Stock Sale Agreement provides that within a certain period of time, "the Buyer(s) shall execute, for each Seller, a Promissory Note, and a Pledge and Security Agreement." Only Korley executed promissory notes in favor of the Sears Family Members.

The "Minutes [of the] 2008 Annual Meeting of Shareholders [of the Debtor]" recite with respect to the stock purchased in the Stock Sale Agreement that "the stock should be redeemed by [the Debtor] and held as treasury stock and should not pass to Korley B. Sears when paid for." A resolution (the "2008 Resolution") was adopted providing that "the [Debtor] shall redeem and make all payments required to be made, to acquire all shares of [the Debtor], stock and all other shares provided to be sold by [the Sears Family Members] under the terms of the June 2007 Stock [Sale] Agreement." The Debtor made a down payment and the first installment payment under the Stock Sale Agreement, but made no additional payments.

In February 2010, Robert and Korley each filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). In March 2010, the Debtor filed its bankruptcy petition. Robert and Korley submitted that they are the only shareholders of the Debtor. The Sears Family Members submitted that they have a security interest in Korley's shares in the Debtor and that they have the right to vote those shares. When disputes arose between Robert and Korley on the one hand, and the Sears Family Members on the other hand, regarding ownership and control of the Debtor and issues related to the bankruptcy case, the Debtor's counsel withdrew his representation and, upon a motion made by the Sears Family Members, a Chapter 11 trustee (the "Trustee") was appointed. The case was then converted to a Chapter 7 case and the Trustee was appointed as trustee in the Chapter 7 case. During the course of the case, the Trustee assumed certain pre-petition contracts of the Debtor, including pre-petition contracts to sell real estate.

The Sears Family Members filed Claims Nos. 8, 9 and 10 in the Debtor's bankruptcy case, seeking sums due under the Stock Sale Agreement. Attached to each proof of claim is, among other things, a narrative explanation of the claim, copies of the Stock Sale Agreement, a promissory note from Korley and the Minutes from the 2008 Annual Meeting of Shareholders. Robert and Korley objected to the Sears Family Members' claims, maintaining that the Debtor bears no liability for the sums due under the Stock Sale Agreement. Robert and Korley argue further that, even if the Debtor was liable to the Sears Family Members under the Stock Sale Agreement, its liability should be discharged based on certain defenses. As an alternative to the Sears Family Members' claims for the direct liability of the Debtor under the Stock Sale Agreement, the Sears Family Members argue that, as third party beneficiaries of a promise made by the Debtor to Korley, as evidenced by the 2008 Resolution, they have a claim against the Debtor's estate.

Korley filed his Claim No. 26, as a contingent claim in the amount of $5,325,291.16, the aggregate amount claimed by the Sears Family Members. The Sears Family Members and the Trustee objected to Claim No. 26.

Robert and Korley requested that the hearing on the objections to Claims Nos. 8, 9, 10 and 26 be postponed to allow them time to conduct discovery. They also requested a hearing with testimony and cross-examination of witnesses, rather than having the matters submitted on affidavit evidence. The bankruptcy court denied the requests by Robert and Korley. In a text order dated April 25, 2011, the bankruptcy court stated:

> The court generally agrees with [Counsel to Robert and Korley] that an opportunity for discovery and cross examination are important elements in any claim objection proceeding, but the hearing on affidavit evidence should not be eliminated. [Counsel to Robert and Korley] still has over three weeks to conduct initial discovery (and obviously has had many months to have done so). Further, at such a hearing, the Court can determine the complexity of the issues, the efforts of the parties to date, and whether further proceedings are necessary or appropriate under the circumstances.

On May 18, 2011, the bankruptcy court held a hearing on the objections to Claims Nos. 8, 9, 10 and 26. The bankruptcy court took the matters under advisement and entered its ruling in a written order dated June 8, 2011. Referring to its April 25, 2011 text order, the bankruptcy court explained in its June 8, 2011 order that:

> [Counsel to Robert and Korley] requested the hearings be postponed to allow time for discovery and that they be set for live testimony. While the court generally agrees that time for discovery and live testimony are generally appropriate where there are disputed issues of fact, [counsel's] motions were denied and the hearing held to determine the extent of any factual disputes and to determine issues of law (Fil. # 386).

The bankruptcy court overruled the objections of Robert and Korley to the Sears Family Members' claims and allowed those claims. It sustained the objections to Korley's Claim No. 26 and disallowed that claim.

**STANDARD OF REVIEW**

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. Fed. R. Bank. P. 8013; *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation),* 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004) (citations omitted).

**DISCUSSION**

A creditor of the debtor may file a proof of claim. *See* 11 U.S.C. §501(a). Bankruptcy Code §502(a) explains that "[a] claim . . , proof of which is filed under §501 of [the Bankruptcy Code], is deemed allowed unless a party in interest . . . objects." 11 U.S.C. § 502(a). When an objection to the claim has been filed, the court is charged with determining the amount of the claim as of the petition date and it shall allow the claim in such amount unless the exceptions listed in Bankruptcy Code §§502(b)(1) through (9) apply. *See* 11 U.S.C. §502(b)(1)-(9).

A proof of claim that is filed in accordance with the Federal Rules of Bankruptcy Procedure is "prima facie evidence of the validity and the amount of the claim." Fed. R. Bankr. P. 3001(f). To overcome a claim's presumptive validity, an objection must be supported by substantial evidence. *McDaniel v. Riverside Cnty. Dep't of Child Support Servs. (In re McDaniel)*, 264 B.R. 531, 533 (B.A.P. 8th Cir. 2001); *Consumers Realty & Dev. Co, Inc. v. Goetze (In re Consumer Realty & Dev. Co., Inc.)*, 238 B.R. 418, ( B.A.P. 8th Cir. 1999) (party objecting to proof of claim must produce evidence to overcome prima facie validity). The claimant must provide additional evidence of the claim's validity if the party objecting to the claim rebuts its presumptive validity. *Gran v. I.R.S. (In re Gran)*, 964 F.2d 822, 827 (8th Cir. 1992).

## I.  Disallowance of Korley's Claim No. 26

The bankruptcy court correctly disallowed Claim No. 26 filed by Korley. Although the alleged basis for Korley's Claim No. 26 is difficult to decipher, Robert and Korley describe it as a contingent claim by which "if there was a contract by the corporate resolution to redeem the stock of Korley, he has greater rights to payment by [the Debtor] on the claims aggregating $5,325,291.16 than do [the Sears Family Members]."  Attached to Korley's Claim No. 26 is a narrative explanation of the claim and the proofs of Claims Nos. 8, 9, and 10 filed by the Sears Family Members, without most of their exhibits.  We agree with the bankruptcy court's assessment that on its face, Korley's proof of claim provided absolutely no legal basis for liability by the Debtor.

## II.  Allowance of claims of Sears Family Members
### A.  Liability under the Stock Sale Agreement

We agree with the bankruptcy court's determination that Robert and Korley failed to overcome the presumptive validity of the proofs of claim filed by the Sears Family Members.  The plain language of the Stock Sales Agreement imposes liability on the Debtor for the deferred purchase price and the Debtor's liability was not discharged under any of the defenses submitted by Robert and Korley.

The parties agree that the Stock Sale Agreement is the controlling document, that it is unambiguous and that Nebraska law governs.  The parties disagree, however, regarding whether the Debtor is liable under the agreement.  According to Robert and Korley, the "the unambiguous Stock [Sale] Agreement on which [the Sears Family Members] base their claim[s] does not provide that [the Debtor] has any . . . liability."  The Sears Family Members maintain, however, that the Stock Sale Agreement plainly provides that the Debtor is liable for the deferred purchase price.

We review the bankruptcy court's interpretation of the unambiguous contract *de novo* and we do not consider extrinsic evidence of intent.  *See ABC Elec., Inc. v.*

*Neb. Beef Ltd.*, 249 F.3d 762, 766-67 (8th Cir. 2000); *Davenport Ltd. P'ship v. 75 th & Dodge I, L.P.*, 780 N.W.2d 416, 422 (2010) ("A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms."). The fact that each party claims the Stock Sale Agreement unambiguously supports its position does not preclude us from finding unambiguity. *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1041 (8th Cir. 2000) (citation omitted); *Davenport*, 780 N.W.2d at 422 ("A court interpreting a contract must first determine as a matter of law whether the contract is ambiguous.").

The bankruptcy court agreed with the parties that the Stock Sale Agreement is unambiguous. It also agreed with the Sears Family Members that the Debtor was liable as the "Buyer" under the agreement. We agree with the bankruptcy court. In the plainest of language, Paragraph 2 defines the Debtor as one of the buyers. In Paragraph 4, it explains that the purchase price is "to be paid by Buyers to Sellers. . . ." Likewise, the Debtor signed the Stock Sale Agreement as a buyer.

Among other arguments, Robert and Korley maintain that by using the term "Buyer(s)," the Stock Sale Agreement did not require both Korley and the Debtor to sign promissory notes and it only imposes liability for the purchase price on the person or entity who does sign a promissory note.[3] Paragraph 7 of the Stock Sale Agreement explains that "Buyer(s) shall execute, for each Seller, a Promissory Note and a Pledge and Security Agreement." According to Robert and Korley, the Debtor is not liable to the Sears Family Members because only Korley, and not the Debtor, executed promissory notes.

---

[3] One of the other arguments made by Robert and Korley is that the reading of the Stock Sale Agreement requested by the Sears Family Members requires this Court to look at Paragraphs 2 and 4 in isolation and would change the meaning of the agreement as a whole. We disagree. Paragraphs 2 and 4, imposing liability on the Debtor, are consistent with the agreement in its entirety.

We disagree. The four corners of the Stock Sale Agreement unambiguously provide that the Debtor is liable thereunder. Nowhere does the agreement state that a party will be released from liability if it fails to sign a promissory note. The arguments by Robert and Korley amount to an attempt to create an ambiguity in a document that they have already admitted to be unambiguous, which we will not allow. Moreover, it is curious that Robert and Korley asked the bankruptcy court and this Court to refer to extrinsic evidence, the promissory notes, to interpret an unambiguous contract.

We note further that Robert and Korley did not provide evidence to dispute the balance owed to each of the Sears Family Members. The bankruptcy court properly allowed the claims in the amount for which they were filed.

### B. Defenses alleged By Robert and Korley[4]
#### i. Breach of duty of good faith and fair dealing/loyalty

Robert and Korley maintain that any liability of the Debtor under the Stock Sale Agreement was discharged as a matter of law based on the Sears Family Members' alleged breach of their implied duties of good faith and fair dealing and Ron Sears's and Rhett Sears's alleged express duties of loyalty to the Debtor set forth in the Stock Sale Agreement. As grounds for such breaches, Robert and Korley cite to post-bankruptcy support by the Sears Family Members of the Trustee's efforts in

---

[4] In addition to the two defenses alleged by Robert and Korley that we discuss in this opinion, Robert and Korley referred to other alleged defenses in their Statement of Issues. Of the additional defenses, the only defense that Robert and Korley mentioned beyond their Statement of Issues was the allegation that any contractual liability of the Debtor was discharged by new or substituted contracts consisting of the promissory notes. This argument was discussed only briefly and only in the reply brief filed by Robert and Korley and we, therefore, consider it to be abandoned or waived.

assuming executory contracts and closing purchase agreements that were commenced pre-petition. They also refer to the Sears Family Members' "opposition to the Chapter 11 case of AFY," their sponsorship of the Debtor's liquidation and their support for other efforts of the Trustee. Assuming, for the sake of argument, that these duties existed in the first instance, Robert and Korley have failed to show how they were breached in a way that would merit disallowance of the claims. They cite to only *post-petition* actions of the Sears Family Members as breaches of their duties. But claims in bankruptcy, such as the claims of the Sears Family Members that are at issue here, are determined as of the bankruptcy petition date. *See* 11 U.S.C. § 502(b) ("the court...shall determine the amount of such claim . . . *as of the date of the filing of the petition...* ") (emphasis added). Moreover, it would defy logic to hold that a claimant would act in bad faith simply by trying to enforce his claim and assist a case trustee in procuring payment of it.

### ii. Supervening frustration

Robert and Korley also maintain that any liability of the Debtor under the Stock Sale Agreement was discharged as a matter of law because "the principal purpose upon which the Stock Sale Agreement was based was frustrated and the basic assumption on which the Stock [Sale] Agreement was made did not occur." They allege that the Stock Sale Agreement is unenforceable because the parties entered into it under the assumption that the Debtor's operations would continue as a going concern and that the payment for the stock would come from the Debtor's cash flow and earnings. Due to the country's unforeseen recession and the withdrawal by the Debtor's lender of an operating line of credit, the Debtor did not continue to operate as a going concern.[5]

---

[5] Robert and Korley presented their supervening frustration theory to the bankruptcy court. The bankruptcy court did not discuss the defense in its written opinion, so we must assume it rejected that theory. We agree with the bankruptcy court's decision.

Under the theory of discharge by "supervening frustration," a party no longer has the duty to perform under a contract "unless the language or the circumstances indicate to the contrary" in circumstances "[w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts §265 (1981) (quoted in *Cleasby v. Leo A. Daly Co.*, 376 N.W.2d 312, 318-19 (1985)); *see also American Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1026 (8th Cir. 2010) (citing Restatement (Second) of Contracts § 265).

Robert and Korley claim that the parties would not have entered into the Stock Sale Agreement if the stock purchase price was not going to be paid out of the Debtor's cash flow and earnings, and they cite to a declaration of Robert as support for their argument. Notwithstanding Robert's declaration, Robert and Korley failed to satisfactorily prove a supervening frustration defense. Applying the theory of commercial frustration to the situation here would be akin to allowing any party to be relieved of his contractual duties simply because he is no longer able to pay them, and would mean a debtor is freed from his obligations each time he is unable to reorganize. That is simply not the law. We also note that the Stock Sale Agreement itself recognizes the possibility of the Debtor's bankruptcy when it requires in Paragraph 7.1 that the promissory notes must provide for immediate payment upon the Debtor's bankruptcy.

Robert and Korley failed to provide evidence sufficient to rebut the presumptive validity of the Sears Family Members' claims and the bankruptcy court, therefore, properly allowed the claims as filed.

### C. Standing

The Sears Family Members argue that, if we affirm the bankruptcy court's disallowance of Korley's Claim No. 26 (which we do), Robert and Korley will lack

standing to appeal the bankruptcy court's allowance of the Sears Family Members' claims because Robert and Korley will not be directly affected by the bankruptcy court's decision.

The issue of standing is not material to the outcome of this matter because, even if Robert and Korley have standing, we affirm the bankruptcy court's decision to allow the Sears Family Members' claims. Nevertheless, Korley has standing to challenge the allowance of the Sears Family Members' claims. Until we considered the disallowance of Korley's Claim No. 26 as a part of this appeal, there was a possibility that Korley would be a claimant of the Debtor's estate.[6]

### III. Denial of request for continuance of hearing and hearing with testimony of witnesses and cross-examination

There was no need for the bankruptcy court to allow Robert and Korley more time to develop the record or a hearing with testimony and cross-examination of witnesses, before it ruled on the claim objections. Bankruptcy Code §502(b) provides that when an objection to a claim is made, "the court, after notice and a hearing, shall determine the amount of such claim. . . ." Section 102(1)(A) defines the phrase "after notice and a hearing" as "after such notice as is appropriate *in the particular circumstances*, and such opportunity for a hearing as is appropriate *in the particular circumstances*." 11 U.S.C. §102(1)(A) (emphasis added); *see also Yehud-Monosson USA, Inc. v. Fokkena (In re Yehud-Monosson USA, Inc.),* 458 B.R. 750, 756 (B.A.P. 8th Cir. 2011) (affirming denial of request for evidentiary hearing prior to conversion of case from Chapter 11 to Chapter 7).

By the date of the hearing, over a year had already passed since the Sears Family Members filed their claims and since the Sears Family Members had objected

---

[6] We do not need to consider whether Robert had standing because Korley also participated in this appeal.

to Korley's Claim No. 26. Therefore, Robert and Korley were afforded sufficient time to conduct discovery. Moreover, Robert and Korley have failed to identify any fact issue that would have benefitted from the testimony and cross-examination of witnesses. The bankruptcy court conducted a hearing during which it necessarily assessed the matters, including the complexity of the issues and whether further proceedings were necessary, and it properly ruled on them in its June 8, 2011 order.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decisions of the bankruptcy court.

---